By the Court,
Hitchcock, Judge.
The motion to dismiss the appeal in this case, is founded upon the supposition that an appeal in ■chancery can not be sustained where the decree in the court below, and from which the appeal was taken, is entered by consent. That such is the ease in England and New York, would seem to be evident, from the authorities cited by the complainants’ counsel. But before these authorities can be considered as effective in this state, it must be shown that the laws of the countries where the decisions were made, are similar to our own upon the subject of appeals. This subject, •since the first organization of the state government, has been regulated in this state by statute. And when a question arises as to the propriety of sustaining an appeal, it is the duty of this court to, look to <our statutes, and if, by a fair construction of those statutes, the *189 appeal can be sustained, we are bound to do it, regardless of the-practice in other states and countries upon the same subject. In construing these statutes, the same rules must be observed as in. construing other statutes, tho great object being to ascertain the-meaning and intent of the law, from the language therein used. And this court could not be justified in giving a forced construction to the language and phraseology of a statute, in order to make-file practice in our courts, either in law or equity, conform to the> practice of the courts in other states and countries.
As before remarked, the subject of appeal in judicial proceedings has been, in this state, from its first organization, regulated, by statute. And the right of appeal, both in cases at common law and in chancery, has been secured in almost every possible case.to the parties litigant. The principle seems to have been adopted as a general rule, that the decision of the court having original jurisdiction of the ^matter litigated, shall not be conclusive of the rights of'tho parties, if either desire to remove the case to a. superior tribunal. This is the policy of the law, and it is the duty oJ this court to give it effect.
The law regulating appeals in chancery, will bo found in section 55 of the act of March 10, 1831, “directing the mode of proceeding in chancery.” 29 Ohio L. 81. It is in these woi’ds : “ Any person, or the heirs or representative of such person, may appeab to the Supreme Court, from any final sentence or decree pronounced and made in any case or suit in chancery in the court of common pleas, on giving notice and security within the time required by law, in cases of appeals at law.” It is impossible for-me to conceive of language which could be more clear and explicit,., and which would secure to suitors more effectually the right of appeal. As to the extent of this right, there is no limitation, except that there sha,11 bo first a “ final sentence or decree pronouned.”' As to what amounts to a “final sentence or decree,” there may be some doubt and some room for construction. We have held that a sentence or decree, conclusive of the rights of the parties, is such “final sentence or decree.” But when this is ascertained, there is-no limit as to the right of appeal, nor room for construction with! respect to it. In order to sustain the position assumed by the-complainants’ counsel, we should be under the necessity of adding to the section quoted, a proviso, to the following effect, “that such-final sentence or decree’'' shall not have been pronounced or made by■< *190 ■and, with the consent of the party appealing. This is beyond our power. And even were we inclined to do it, we could not in conformity with the practice heretofore adopted. It is true that there is no case reported in which the question has been directly made and decided, but we know that it has been the uniform practice to appeal from decrees so made, and to sustain such appeals. In fact it is not within my recollection, that the propriety of such practice has ever before been questioned. Although no case is reported in which the point is directly made and decided, yet in the case of White v. Bank of the United States, 6 Ohio, 529, the right of appeal in such cases is virtually recognized.
It is urged by the counsel for complainants, that the right of appeal from judgments at law, is as general as from decrees in • chancery, and that as this court do not sustain appeals from voluntary nonsuits, and from confessions of judgments, it ought not for the same reason to sustain appeals from decrees made by consent. So far as respects judgments by confession, there can not be Raid to be any settled practice of the court, but it is true that appeals are not sustained from ^voluntary nonsuits. And it is believed that such practice is in conformity with the pro•visions of the statute.
Section 108 of the act regulating the practice of the courts of law, allows appeals. It provides, “that in civil cases an appeal shall be allowed, of course, to the Supreme Court, from any judgment or decree rendered in the court of common pleas, in which such court had original jurisdiction.” 29 Ohio L. 56. This section, however, is not the only one in the act providing for an •appeal. In section 96 it is enacted, “that, in all cases where a nonsuit may he directed by the court of common pleas, by reason of irrelevancy of testimony,” etc., “the plaintiff shall have the -same right to appeal, as in other cases.” Now, if it was intended to give the right of appeal in cases of nonsuit by section 108, why was this provision made for a particular class of nonsuits in section 96 ? No good reason can be assigned for it. And taking the two sections together, I can come to no other conclusion than this, that it was not the intention in section 108 to give the right to appeal from any judgment except such as are final and conclusive upon the parties. Such not being the effect of a judgment of non-suit, as the plaintiff could commence another suit, he has not the *191 right to appeal from such judgment by this section, but that right-is secured to him in the cases specified in section 96.
The provisions contained in section 96, befo re referred to, were first introduced into the statutes in February, 1813. 1 Chase’s St. 795. Previous to that time the right to appeal was secured to the parties in as general terms and in precisely the same words as in section 108 of the act of 1831. 1 Chase’s St. 711. And yet the Supreme Court had uniformly decided that an appeal could not be sustained from any judgment of nonsuit. This fact was well known to the general assembly. Still that body, possessing this knowledge, and acting upon this subject, made no other change than to provide that from a particular class of nonsuits an appeal might be taken. 2 Ohio, 87.
Under these circumstances, no valid argument can be drawn from the practice of this court relative to appeals in cases at law, to justify us in sustaining the motion of the oomjfiainant, and the same must be overruled.
Having disposed of the motion to dismiss the appeal, I will now proceed to consider the ease upon its merits.
The facts of the case, as disclosed in the pleadings and testimony, are as follows: At an early period, the precise time not known, *James Dailey purchased of Joshua Stowe, by contract, two tracts of land, in the township of Stowe, in Portage county, one containing 160 and the other 40 acres. Whether the two tracts were purchased at the same time, or were separate purchases, is uncertain. It is alleged by the complainants, that at one time Dailey had a deed for the larger tract, executed by the agent of Stowe, which was afterward redelivered or destroyed, but of this fact there is no sufficient evidence. The original price of the land is not ascertained by any of the proofs in the case, but it seems that payment, in part, was made from time to time, although there is no evidence as to the amount thus paid.
On July 8, 1825, a new contract was made between Stowe and Dailey, relative to the same land, by which Stowe agreed, upon the performance of the covenants therein contained, by Dailey to be performed, to convey to him the land. Dailey on his part covenanted to pay $310.29, as the purchase money; and to secure the payment, at the request of Stowe, to execute his bond to Isaae Spencer, treasurer of the State of Connecticut, for the use of the school fund of said state, conditioned for the payment of that *192 money to said state, by September 2, 1827, with annual interest to-be computed from September 2, 1825. Dailey further covenanted to pay the taxes upon the land as the same fall due, to commit no waste, and to make no assignment of the contract without the consent of Stowe. It was further expressly stipulated that if Dailey should fail in the performance of any of' his covenants, then Stowo should be released from performance on his part. On tho day of tho contract, Daileys made the bond to tho treasurer of the-State of Connecticut, according to the stipulation. On the same day, Stowe being indebted to the State of Connecticut, proposed to deed ihe land, in the contract described, to the State of Connecticut, in part payment of said debt, subject to sajd contract with Dailey, and the agent of the State of Connecticut made an indorsement upon the contract to the effect, that if such conveyances should be made, and if Dailey should pay his bond to the-state agreeably to its tenor, then the said state would release to Dailey all her right and tíllelo said land. The making of this-contract, the indorsement on the same, and the execution of the bond, appear to have been parts of one and the same transaction, and the whole arrangement was entered into by Stowe, Dailey, and the State of Connecticut, by her agent.
In April, 1826, Stowe conveyed the land to the State of Connecticut, %nd received a credit equal to the amount secured by Dailey’s bond, and by that conveyance vested the legal title in the State of Connecticut. Stowe, at the same time, assigned over to said state his duplicate of the contract with Dailey. Dailey remained in possession of the land until 1826, when he died, leaving a widow, or a woman to whom.he had been married, and supposed to bo his widow, and a number of children. Administration was granted upon Dailey’s estate to one of bis children. No-part of the purchase money, of the interest, or of the taxes, was paid during Dailey’s lile, or by bis administrator or heirs, after-bis death.
In 1828, Leonard Case, acting as the agent of the State of Connecticut, and -having the bond of Dailey in his hands for collection, had an interview wiih the administrator and urged him to make payment. This tho administrator refused to do, assigning as reasons that tho estate was insolvent, that he had not tho means of paying, and that his co-beirs would not assist him to do it. At length an arrangement was made, by which Case agroed for the- *193 State of Connecticut to pay the administrator $100, and the administrator agreed to give up the contract, and cancel the bond, which was done. The possession of the land was then abandoned. On September 1,1828, the land was conveyed by the State of Connecticut, to Orrin Gilbert, one of the defendants, who took immediate possession, and has boon in possession ever since, making large and valuable improvements. In its present improved state, it is worth from $5,000 to $6,000.
James Dailey, before removing to Ohio, was residing in the State of Virginia, with a woman supposed to be his wife, by whom he had three children, John, James, and Nancy, intermarried with John Moreton. This woman was living when he came to Ohio. In this state he married another woman, by whom he had several several children, and with whom he lived until his death. There is no proof that the Virginia children ever resided with their father in Ohio. No movement, so far as appears, was ever made by the heirs of Dailey, to make payment to the State of Connecticut, or to procure a title to the land. In Augast and September, 1836, one Oliver O. Brower procured separate deeds of release from James Dailey, of Virginia, John Dailey, of Coshocton county, Ohio, and Nancy Moreton, of Wayne county. The releasors claim to be the heirs of James Dailey, deceased, and release to Brewer all their interest in their father’s estate. The whole consideration of these deeds is $120. In October, 1836, Brewer tendered to Caso, as agent *of the State of Connecticut, $575, as the balance due upon Dailey’s bond to the state, and claimed a fulfillment of the contract between Stowe and Dailey, which had been assigned to the state.
The bill isfiled by Oliver O,Brewer, John Dailey, James Dailey, and John and Nancy Moreton, against the State of Connecticut, Joshua Stowe, and Orrin Gilbert. The prayer of the bill is that such of the defendants as have title to the premises be compelled to convey to Brewer, and to account for the rents and profits.
It is claimed lor the complainant, Brewer, that by his purchase, be is entitled to the whole interest which was vested in James Dailey at the time of his death, the other children of the decedent being illegitimate and incapable of inheriting from their father. If we were carefully to examine all the testimony in the case, there would perhaps remain some doubt upon this point, to say the *194 •least of it, but in the view we take of the case, it is a point entirely immaterial.
The principal position assumed by the counsel for the complainant is, that the conveyance by Stowe to the State of Connecticut, was a mortgage, that the equity of redemption was vested in Dailey, and descended to his heirs. That “in equity the character •of the conveyance is determined by the clear and certain intention of the parties, and any argument in the deed or in a separate instrument, showing that the parties intended that the conveyance should operate as a security for the repayment of money,” will make it a mortgage, and give to the mortgagor the right of redemption, there can be no doubt. But was this a transaction of this kind ? It seems to me not. A contract was made between Btowe and Dailey, for the sale of these lands, for which a specified sum was to be paid. Stowe being indebted to the State of Connecticut, in part payment of this debt, assigned over this contract to the state, and conveyed to the state the land which was the subject matter of the contract, and the state on her part undertook to fulfill the obligations of Stowe — in other words to convey to Dailey when the purchase money should be paid. Dailey assented to this arrangement, and in fact made his bond to the state for the payment of the purchase money. In consequence of this arrangement, the State of Connecticut acquired all the rights of Stowe, and was subjected to all his obligations with respect to this property. And in deciding the ease, we must be governed by the same principles we would be, were the case between the representatives of Dailey and Stowe alone, or had the contract been originally made between the State of Connecticut and Dailey.
^Considering the case, then, as if it were between Stowe and the present complainants, or as if the contract had been originally made between the State of Connecticut and Dailey, what are the circumstances? On July 8, 1825, a contract was made by which Dailey agreed to purchase the land in controversy, for which he covenanted to pay the price stipulated, in two years from the 2d day of September then next ensuing, thereby fixing the day of payment upon September 2, 1827. He further agreed to pay the interest annually, and the taxes, and he also bound himself not to assign or transfer the contract without the assent of his vendor. That time was of the essence of this contract, is apparent, for it contained a stipulation that if the vendee should fail in the per *195 formance of any of his covenants, then the vendor should be released from performance on his part. Every one of these covenants have been violated by the vendee during his life, or by his representatives since his decease. Neither the purchase money, the interest, nor the taxes were paid in time; nor have they been yet paid. And the legal representatives, or pretended legal representatives of Dailey, have attempted to transfer his interest in the contract, contrary to his express covenant. True, in October, 1836, Oliver O. Brewer offei'ed to pay to Case the balance then duo the state, but Case denies that at that time he was the agent for the State of 'Connecticut. But admitting that he was the! agent, was this offer made in time? The first installment of interest fell due on September 2, 1826; the principal fell due on September 2, 1827; the land itself was abandoned by the representatives of Dailey, in the spring of 1828, and was sold to the defendant, Gilbert, in the fall •of the same year. This offer, then, was not made until more than ten years after the first payment of interest should have been made, more than nine years after the principal should have been paid, •and more than eight years after the land had been abandoned and the contract given up to the vendor. Under these circumstances it seems to us that there was clearly an abandonment of the contract, and that the complainants can not now set it up as against these defendants.
It seems to be thought, however, that in favor of heirs this contract should be resuscitated and enforced ; but it must be remembered that the heirs of James Dailey have no interest in this suit, or if they have, that interest is against the real complainant. For although three of the children of Dailey are named as complain•ants, Oliver O. Brewer has the'sole interest in the case. The prayer of the bill is, that a decree may be made in the case which would result to his benefit alone.
* For a mere pittance he has purchased from heirs, as he ■says, a property worth from $5,000 to $6,000. In order to enforce his claim, he would stigmatize the ancestor of those heirs as having been guilty of bigamy, and further would bastardize a majority of the children of' that ancestor. However anxious this court might be to protect the rights of heirs, it does not seem that this ■complainant is very desirous to do it, nor do we see that he is entitled to any peculiarly favorable consideration.
Bill dismissed.