# Board of Education, Chicago, Impleaded with Lucius B. Otis v. August Frank et al.

1.   VALUES—*In Fixing, What is not to be Considered.*—It has never been held, even in cases of valuation of property for the assessment of taxes, to be a good ground of relief by bill in equity, that the property of some other tax payer has not been assessed high enough, and there is no reason why the scope of equitable jurisdiction should be enlarged in this regard when the valuation grows out of a private contract.

2. RENTAL VALUES—*Methods of Determining Values Fixed by Contract.*—Where parties by contract fix a method of determining the value of property as a basis for fixing its rental and such method has been pursued, neither party can obtain a standing in equity to be relieved of his contract.

3. SAME—*Over-valuation—The Remedy.*—In order that a party in such a case may be entitled to relief in equity, there must be joined to the alleged resulting injury or over-valuation either illegality in the appointment of the appraisers, or in the methods of procedure by them, or as to matters taken into consideration by them, or a violation in some way of the provision of the lease concerning the making of the valuations, or something which amounts to a fraud or mistake other than a mere error of judgment.

4. APPEALS—*From Orders of a Party's Own Procuring.*—An injunction was ordered by an *ex parte* indorsement on the bill by the judge of the court upon the recommendation of a master in chancery, directing that the writ issue on giving a bond, which was done, and the writ issued. No order was entered of record at the time, but after the party, against whom the writ was issued procured the entry of a formal order, in conformity with that indorsed upon the bill, *nunc pro tunc,* and upon his motion an appeal was allowed *nunc pro tunc. Held,* that this was not such an order of the party's own procuring, as prevented him from taking an appeal therefrom.

**Bill for Injunction.**—Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the March' term, 1896. Reversed and remanded with directions. Opinion filed May 14, 1896.

DONALD L. MORRILL, attorney for appellant; LORIN C. COLLINS, JR., of counsel.

MORAN, KRAUS & MAYER, attorneys for appellees.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This was a bill filed by appellees for an injunction against the appellant Board of Education, and one Lucius B. Otis, from declaring a forfeiture of a certain lease of school lands, and from enforcing payment of certain ground rent, and the appeal is from an interlocutory order of injunction granted upon such bill.

The premises in question consist of four adjoining lots,

each being 24 feet wide and 120 feet deep, viz.: lots 35, 36, 37 and 38 in block 142 in the School Section Addition to Chicago, situated at the northwest corner of State and Monroe streets, in said city, and fronting in the aggregate ninety-six feet on State street and 120 feet on Monroe street.

Of said four lots, the said Lucius B. Otis was the lessee of the said Board of Education under a separate lease of each lot for a term of fifty years from May 8, 1880, at a fixed annual rental for the first five years of said term. The leases provided for a method of appraising the true cash value of the premises, exclusive of improvements thereon, for every succeeding five years of said term, and that six per centum of such several valuations should be the annual rental thereof for said several five year periods.

A dispute and suit in equity occurred over the first of such valuations made in 1885, and resulted in the execution between the Board of Education and Otis on June 15, 1888, of certain supplemental leases, whereby the term of each of said original leases was extended to May 8, 1895, upon annual rentals agreed upon for the first period of ten years from May 8, 1885, and thereafter to be determined by the calculation of the same rate per centum upon valuations to be made every ten years instead of every five years, as provided in the original leases. A different method for the appointment of appraisers was also provided for by said supplemental leases.

The valuations agreed upon for the ten year period ending May 8, 1895, were as follows: For lot 35, $67,200; lot 36, $67,200; lot 37, $72,000; lot 38, $96,000.

The appraisers who made the valuation in 1895, for the ten year period to run from May 8, 1895, appraised the lots as follows: Lot 35, $150,000; lot 36, $160,000; lot 37, $200,000; lot 38, $240,000.

Before this last appraisal was made, and on February 1, 1894, the appellees leased from said Otis the said four lots and the improvements thereon, for a term of fifteen years, beginning May 1, 1895, and in consideration of such leasing to them covenanted to pay as part of the rental thereof all

such ground rent as by the terms of said leases to Otis, he, the said Otis, should be bound to pay to the Board of Education.

The method of appointment of appraisers which was provided for by said supplemental leases, was that the Board of Education should appoint one; any judge holding the Circuit Court of the United States for the Northern District of Illinois should appoint another, and the judge of the Probate Court of Cook County should appoint the third, and it was provided that any two of such appraisers should have the power to make the appraisement.

The qualifications of such persons were merely that each one should be a discreet male resident of the city of Chicago, not interested as lessee or mortgagee of school property in said city, and their duty was to determine the true cash value of the demised land, exclusive of improvements thereon.

It was also provided that the persons appointed, or either of them, should not be the representatives of either party to the leases.

The bill attacks the fitness or qualification of the appraiser named by the Board of Education, on the ground that he had been, a short time prior to his appointment, a member of the Board of Education, and its president, and had been actively identified with the interests of said board for a long time; that his interests and inclinations were wholly on the side of the board, and that he was in effect a representative of the board at the time of his appointment to such an extent that he was not and could not be a discreet and impartial appraiser as between the board and the lessee, Otis; and that so being, his appointment was null and void, and rendered the said appraisal, participated in by him, null and void.

The appointment of the second appraiser was made by Judge Grosscup, a district judge of the said United States Court, and although it is not contended that he might not, by virtue of his office, lawfully hold the Circuit Court of the United States in said district, yet it is insisted by the bill

that as a matter of fact he was not holding said Circuit Court when he made such appointment, but was holding said District Court; and it is contended that on account thereof the appointment of said second appraiser—he being appointed a successor to one who was previously appointed under the same circumstances as to the judge and the court he was holding, and who had not died, resigned, or been removed, but had simply refused to act—was null and void under the provisions of the supplemental leases, with reference to the person and capacity in which he was at the time acting of the judge who should make the appointment, and the power to appoint a successor only in case of the death, resignation or removal of the one first appointed.

The third appraiser appointed by the judge of the Probate Court is in no way attacked.

The contention that the appraiser named by the Board of Education was an improper appointee, within the provisions of the supplemental leases, does not seem to merit much discussion.

The bill makes no allegation that he was, when appointed, a member of the board, or a representative of the board in any capacity, nor that he was a lessee or mortgagee of school property. Other interests or inclinations which he might have as a citizen and resident of Chicago are not sufficient to disqualify him, and we must regard him as a fit and proper appointee, for anything that is alleged to the contrary.

Perhaps because of the provisions of the leases that any two of the appointed appraisers might make the valuations, nothing need be said about the sufficiency of the appointment of the second appraiser made by Judge Grosscup, further than to remark that the objection is at best but a technical one, and it is a well understood principle that a mere technical objection does not afford a standing in equity.

There is no charge made, either in the bill or in argument, against the personal fitness and qualification of the person so appointed, and we do not think the mere technicality

urged can be taken advantage of in equity by the appellees. All the other objections that the bill presents finally resolve themselves into the charge that the valuations that were made by the appraisers of the lots in question were unfair, oppressive and excessive, and therefore void.

We can not stop to notice in detail the various matters that are alleged tending to show the excessiveness complained of. The fact that other property that was appraised by the same appraisers, appointed in like manner under the. provisions of other like leases, was valued relatively lower than the lots in question, and that the Board of Education, by negotiation with other lessees of other school property, accepted a relatively lower valuation for such other property, affords no ground for relief to the appellees. It has never been held, even in cases of valuation of property for the assessment of taxes, that it was good ground for relief by bill in equity, that some other tax payer was not assessed enough.

And we perceive no reason why the scope of equitable jurisdiction should be enlarged in that regard, where the valuation to be fixed grows out of private contract. Where parties contract together as to methods of determining the value of property as a basis for fixing its rental, and such methods are pursued, neither side may obtain a standing in equity to be relieved from his bargain. At all events neither party should be entitled to equitable consideration on the ground of an over-valuation without at least an affirmative allegation in his bill of what a true valuation of the property is.

There is no such allegation in this bill. The appellees claim an excessive valuation, but they do not allege with any certainty what the property is worth. The lease provides that the appraisers shall determine the true cash value of the property. They have made such valuation. The appellees dispute its correctness, but they do not allege what the value should be. While we do not decide that if they had so alleged they would have made a case on the face of their bill, we instance the lack of such an allegation as a

conclusive reason why they have not brought themselves within any possible range of equity.

We apprehend that if the appraisers were lawfully appointed, and made their valuations in accordance with the terms of the contracts of lease, the mere fact that their valuations were excessive, or, in other words, that they had merely erred in judgment, would not furnish ground for relief in equity.

In order that a party, in such a case, may be entitled to relief in equity, there must be joined to the alleged resulting injury or over-valuation, either illegality in the appointment of the appraisers, or in the methods of procedure pursued by them, or as to matters taken into consideration by them, or a violation in some way of the provisions of the leases concerning the making of the valuations, or something which shall amount to fraud, or mistake other than mere error of judgment.

We have already seen that no valid objection in equity can, in our opinion, be taken to the appraisers, or to the method of their appointment, and without stopping to mention in detail such matters as are well alleged concerning their methods of procedure, and the matters considered by them in arriving at their valuations, our opinion is that nothing so alleged constitutes a violation of either the letter or the spirit of the leases.

There remains to be considered the point made by appellees that the order of injunction appealed from was procured by the appellant Board of Education, and that said board could not appeal from an order of its own procurement.

The bill was filed and summons issued December 30, 1895, and the summons, together with the writ of injunction, were served upon the Board of Education on the next day, December 31st.

The writ of injunction was ordered by an *ex parte* indorsement made on the bill by one of the Circuit Court judges upon the recommendation of a master in chancery, and directed that the writ issue upon the complainants giving a $10,000 bond.

That bond was executed December 31st, and filed the same day, and the writ was thereupon issued.

No order of injunction having been entered of record in said cause, the appellant Board of Education upon the motion of its solicitors procured a formal order therefor in conformity with that which had been indorsed on the bill, to be entered on January 25, 1896, *nunc pro tunc* as of December 31, 1895, and thereupon this appeal was allowed *nunc pro tunc* as of said December 31st.

The writ having issued in pursuance of the order of the judge indorsed on the bill, as it might under the provisions of our statute, we regard it as entirely proper and not at all as interfering with the right of appeal that the party prejudiced by the writ should be permitted upon his own motion to have the order which had already been made upon the application of the other party, duly spread upon the record of the court, so that the record should show the order sought to be appealed from, independently of the vicissitudes to which the bill itself might be subject as a part of the movable files of the court.

Viewed in the light of the whole record, the certificate of evidence which states that the cause came on for hearing upon the motion of defendants (appellants) that an injunction order be entered pursuant to the prayer of the bill, must be interpreted and read as meaning not that an injunction be ordered, but that an injunction order as already made, be entered of record.

We regard the order as one technically proper, though perhaps not absolutely necessary to be entered as a preliminary to the appeal; and the right of appeal being one that is favored in the law of this State, we should not give to an order so entered an interpretation which would contravene that right, where from the entire record it is manifest that the order was procured to be entered for the express purpose of facilitating an appeal. See Mecham v. McKay, 37 Cal. 154; Brewer v. Connecticut, 9 Ohio 189.

The order of injunction will be reversed and the cause remanded, with directions to the Circuit Court to dissolve the

injunction, and it is so ordered. Reversed and remanded with directions.

MR. JUSTICE WATERMAN.

I am of the opinion that the appeal should be dismissed.

In this State the files of the court are in chancery a part of the record. A court of record speaks only by its record; that is, to determine what it has done, recourse must be had to its record. An order for an injunction was entered by writing the same upon the bill December 30, 1895. January 25, 1896, upon motion of the defendants it was ordered that an injunction issue *nunc pro tunc* as of December 31, 1895. An injunction should never be issued *nunc pro tunc.*

An injunction can not be retroactive, nor can an order issued January 25, 1896, make acts done December 31, 1895, disobedience, and hence the actor subject to punishment for contempt.

Appellants prayed an appeal, not from the injunction order made in December, 1895, which was served on appellees December 31, 1895, but prayed and were allowed an appeal only from the injunction order "entered (herein) on the 25th day of January, A. D. 1896, *nunc pro tunc* as of the 31st day of December, A. D. 1895," which order was entered upon the motion of appellants.