# James K. Sebree, Appellee, v. Board of Education of the City of Chicago, Appellant.

## Gen. No. 17,562.

1. LANDLORD AND TENANT—*how appraisal cannot be impeached.* An appraisal made pursuant to the terms of a lease cannot be impeached in the absence of fraud by the testimony of a party participating in making such appraisal.

2. LANDLORD AND TENANT—*what does not disqualify appraiser.* The fact that an appraiser had previously acted in making an appraisement of the same property under the same lease, does not disqualify him from acting in the making of a second appraisal.

3. LANDLORD AND TENANT—*what does not vitiate appraisal. Held,* under the circumstances of this case, the fact that the owner of the fee had paid the appraisers for their services in making the appraisal in question, as well as appraisals with respect to other property, did not vitiate such appraisal.

4. LANDLORD AND TENANT—*what does not vitiate appraisal.* The fact that the appraisers whose appraisement was attacked were appointed or arranged for by one act of the owner of the fee to establish values upon a number of pieces of property instead of being appointed and arranged for specifically and by one act to pass upon the value of the property involved, does not vitiate the appraisement made.

5. Landlord and Tenant—*when provision as to appraisal not mandatory.* Held, that a provision in a lease by which the appraisers were at liberty in forming their judgment of the value of the land without including the value of the improvements thereon, to take into consideration the improvements on such land, was permissive rather than mandatory.

6. Landlord and Tenant—*what essential to set aside appraisal.* In order to set aside an appraisal made pursuant to the terms of a lease, strong reasons must be shown.

7. Evidence—*when testimony given in similar action incompetent.* Testimony given by a witness in a similar action where the parties are different, is incompetent.

Appeal from the Circuit Court of Cook county; the Hon. Thomas G. Windes, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Reversed and remanded with directions. Opinion filed November 28, 1911.

Frank Hamlin and Angus Roy Shannon, for appellant.

Musgrave, Oppenheim & Lee, for appellee; John H. S. Lee, of counsel.

Mr. Justice Clark delivered the opinion of the court.

In this case a bill was filed by appellee for the purpose of having set aside by decree of court an appraisal of certain property theretofore made as a basis for fixing the annual rental to be paid by the appellee to the appellant in pursuance of a certain lease and supplemental lease entered into by the appellant, as lessor, and a lessee to whose right the appellee had succeeded by assignment prior to the making of the appraisement. On account of certain alleged irregularities in the making of the appraisement, as found by the chancellor from the evidence before him, the appraisement was by the decree set aside. The value of the property was found by the decree to be $288,000 instead of $384,000 as fixed by appraisers, and the appellee was ordered to pay 6% thereon or $17,280 per

year as the rental of the property under the terms of the lease and supplemental lease.

Errors are assigned by the appellant, and cross-errors by the appellee, the former contending that the appraisement made should not have been set aside, and the appellee insisting that as the appraisement was set aside by the court, under the terms of the lease there was no new appraisement, and that the appraisement made ten years before, namely in 1895, should govern. By the appraisement of 1895 the value of the property was fixed at the sum of $190,000, thus fixing the annual rental at $11,400.

The property in question is known as lots 18 and 19 in block 142 in School Section Addition to the City of Chicago, and is part of the property upon which the Saratoga Hotel is situated. On the opposite side of the alley from these two lots are lots 20 and 21, also owned by the appellant. A valuation was placed by the appraisers upon these lots of the same amount as upon lots 18 and 19, and that appraisal is the subject of another appeal in this court in case No. 17563, in which the Board of Education of the City of Chicago is appellant, and Ava W. Farwell and others are appellees. The two cases were heard together in the court below and similar decrees entered, the value of the properties involved in the two cases being fixed by the decrees of the court at the same amount in each case. The cases were consolidated in this court for argument, and were argued before and considered by us at the same time.

From the evidence as disclosed by the record, it appears that the Board of Education on or about the 8th day of May, 1880, leased to Francis B. Peabody lots 18 and 19 of block 142 for the period of fifty years. The lease provided for the payment of the sum of $2,736 per year as rent for the said premises for the first five years; after that time an appraisal to be made by "three discreet male residents of the City of

Chicago, who are free holders,'' to be appointed by the Board of Education.   These three appraisers were to fix the cash value of the premises.   The appraisement was to be signed and certified within three months prior to the 8th day of May, 1885, and the yearly rental for the next five years from May 8, 1885, was to be a sum equal to 6% of the valuation then and thereafter to be made.   It was further provided by the lease that a re-appraisal should be made every five years by appraisers to be appointed by the Board of Education in like manner, the rental to be based on the same percentage.   Under the terms of the lease personal notice of the appointment of appraisers was waived, and the lessee estopped from objecting in any way to their appointment unless such objection was made in writing to the Board of Education within thirty days after the appointment.   The lessee was also estopped from objecting in any manner to the action of the appraisers unless such objection was made in writing and filed with the clerk of the Board of Education within thirty days after the filing of the valuation in the office of the clerk of the Board of Education.   The lease provided that the rent should be payable quarterly in advance, and that the lessee should pay all water rates, taxes, duties and assessments.   The lease permitted assignment to be made without the consent of the lessor, provided all rents, taxes, assessments and other charges were fully paid and discharged, and the lessor notified in writing of the assignment.   An assignee was to be subject to the same terms and conditions as the lessee, and it was provided that none of the covenants or agreements of the lease should be waived or forfeited by the act of any collector, employe or agent of the Board of Education, nor in any manner, except by the action of the Board of Education, at the regular meeting thereof.   The lease further provided that in case the Board of Education should neglect or omit to appoint appraisers at any time as required by

the provisions of the lease, then the rents reserved should be the same for the succeeding five years as for the preceding five year period.

It appears that an appraisal was had in February, 1885, which fixed the value of the property at $102,000. This appraisal being unsatisfactory to Francis B. Peabody, the lessee, he filed a bill of complaint for the purpose of having the appraisal set aside and the true cash value of the premises determined by the court. This resulted in a compromise between the litigants and the making of the supplemental lease heretofore referred to. The supplemental lease after providing for an extension of the lease to May 8, 1985, fixed the annual ground rent for the period of ten years from May 8, 1885, at 6% of the appraisal made in that year; provided for a dismissal of the litigation, and for subsequent appraisals during each ten years of the life of the contract; that at no time should the fixed valuation of the property be less than the sum of $81,600, being 80% of the valuation as found by the appraisal of 1885, until the year 1915, when the provision with respect to the minimum valuation clause should be abrogated. Other provisions of the supplemental lease are as follows:

"That in lieu of the method of appointing appraisers, for the purpose of ascertaining, determining and fixing the amount of rent to be paid for said demised land, as provided in and by the terms of said lease, and this supplement thereto, appraisers shall be appointed as follows:

The Board of Education of the City of Chicago, any judge holding the Circuit Court of the United States in and for the Northern District of Illinois, for the time being, and the Judge of the Probate Court of Cook County, Illinois, or the successor of said Court having probate jurisdiction, for the time being, shall each appoint one discreet male resident of the City of Chicago, not interested as lessee or mortgagee of school property in said city, to determine, under oath

first duly taken, the true cash value of said demised land at the time of such appraisal, exclusive of the improvements thereon.

The person appointed by the Board of Education shall be the chairman of said appraisers, and shall call their meetings and preside thereat. Any two of said appraisers shall have power to make the appraisement.

In case the person appointed by the Board of Education shall, before an appraisement is made, die, resign, or neglect or refuse to act as an appraiser, the Board of Education may appoint another person in his place and stead as appraiser, with the same power and authority as if he had been appointed in the first instance.

In case either of the persons, his successor or successors, appointed by any judge holding said Circuit Court of the United States, or by the judge of the Probate Court of Cook County, or the successor of said court having probate jurisdiction, shall die, or resign before an appraisement is made; and in case either of said persons. or the successor or successors of them or either of them, shall neglect, omit or refuse to act as appraiser, or to make or report an appraisement in accordance with the purport and intention of said lease and this supplement thereto, the Board of Education, upon evidence satisfactory to itself, may remove such person or persons for such neglect, omission or refusal to act as appraiser, or to make or report an appraisement, and the vacancy or vacancies so occurring either by death, resignation or removal, shall, on the request of either of the parties hereto, be filed within ten days after such request by the appointment of another person by the judge whose appointee has died or resigned or has been removed, and the person so appointed to fill such vacancy shall in every case have the same power and authority to make said appraisement as if he had been appointed an appraiser in the first instance.

If for any cause, the Judge of the Probate Court of Cook County shall be unwilling to exercise the power

to appoint an appraiser under the terms of this indenture, the Judge of the County Court of Cook County shall act in the place and stead of said Judge of the Probate Court.

It is hereby declared by the parties hereto, that it is not the purpose of this instrument that the persons appointed as appraisers hereunder, or either of them, shall be the representatives of either of the parties hereto.

Fifth: That, notwithstanding anything in said lease, or in this supplement thereto contained, the persons who shall at any time be appointed thereunder to fix and determine the value of the leased land, for the purpose of ascertaining and fixing the amount of rent to be paid therefor, shall at all times, and under all circumstances, be held to be appraisers and not arbitrators, and shall not be bound to give notice of their meetings or proceedings to the parties hereto, except as hereinafter expressly provided:

(A) Upon their appointment, the appraisers shall cause a notice of the fact to be sent by mail, addressed to the lessee, his heirs, executors, administrators, successors, or assigns, at the City of Chicago, Illinois, or at such address in the City of Chicago, Cook County, Illinois, as he, they or it may have previously furnished to the lessor. All notices and papers which may be served on the lessee by the party of the first part, or by such appraisers, in all matters and proceedings concerning the subject-matter of the appraisement, whether before pending, or subsequent thereto, shall be sufficiently served, if sent by mail, addressed to the lessee, at the City of Chicago, Illinois, if no other address shall have been furnished by said lessee, or if mailed to whatever address in said City of Chicago such lessee may have furnished as above provided.

(B) Within twenty (20) days after the mailing of said notice of appointment of appraisers, the lessee may, if he so desire, file with the appraisers, a written statement or argument for their information, and shall, at the same time furnish a copy of the same to the lessors.

(C)   Within twenty days after the receipt of such statement or argument by the lessor, it may cause to be filed with the appraisers a statement or argument in writing, a copy of which shall be furnished to the lessee.

(D)   The lessee may file a reply to the statement or argument of the lessor within ten (10) days after receiving such copy.

(E)   The sole purpose of the four preceding provisions is to allow the parties to present to the appraisers, information within their possession, and their views concerning the value of the demised land.   But it is expressly understood and agreed that the appraisers shall not be concluded, in any event by the statement so made, but shall be at liberty to seek or obtain such information as they deem pertinent, either with or without notice to the parties and to make their appraisals upon all facts within their knowledge, notwithstanding anything contained in the said written statements above provided for.

Sixth:   That, notwithstanding anything in said lease contained, the appraisers shall be at liberty in forming their judgment of the value of the land without including the value of the improvements thereon, to take into consideration, if and so far as they deem it pertinent to do so, the improvements on such land, and the character, condition, value, cost, rental, expenses, and other particulars thereof, and any other facts or information, from whatever source, bearing upon the question of the actual value of said land; and it shall be the duty of the lessee to furnish the appraisers promptly, on request, a statement showing the rental receipts and disbursements on account of said improvements for five years, as near as may be, next preceding the time of the appraisement.

Seventh:   In case of vacancies occurring among the appraisers, and delays in making or reporting of such appraisement shall arise in consequence thereof or in consequence of the appointment of other persons to fill such vacancy or vacancies, and the making and reporting of such appraisement shall be thereby delayed

beyond the eighth day of May, in any year wherein the appraisement is to be made according to the terms of said lease, and of this supplement thereto, it is provided that said appraisers may make and report such appraisement after said eighth day of May, and prior to the first day of July then next ensuing.

Eighth: And it is further understood and agreed by and between the parties hereto that should there be for any cause a failure in the making of an appraisement in any year or years wherein an appraisement should be made under and according to the terms of said lease and this supplement thereto, the amount of annual rent to be paid by the party of the second part for the ensuing period of ten years shall not be rendered uncertain or undetermined by the reason of such failure in making an appraisement, but the sum to be paid as annual rental for and during the period of ten years from the eighth day of May in any year, when an appraisement should have been made, and failed to be made, shall be the same as that paid or reserved as rent during the last preceding period of ten years prior to said eighth day of May. And no covenant in said lease or in this supplement thereto shall in any way be affected, waived or impaired by the failure in the making of such appraisements or either of them.

Ninth: The right reserved by said lease to said lessor to forfeit said lease for any cause, shall not be exercised until after sixty days' notice to the lessee.

Tenth: That the covenants and agreements herein contained shall bind the respective successors, heirs, representatives, administrators, and assigns of said parties, and except as hereinbefore expressly changed or qualified, said lease shall stand and be in full force and effect, according to its terms, as originally executed and delivered.''

It seems that in 1905 there were, including the lease in question, about twenty-three leases between the Board of Education and sundry lessees or assignees of lessees, upon which appraisals were required in order to conform to the provisions of the various indentures. On or about February of that year John McLaren,

William D. Kerfoot and Arba N. Waterman were appointed such appraisers.   John McLaren was the appraiser selected by the Board of Education, William D. Kerfoot by a Judge of the United States Circuit Court at Chicago, and Arba N. Waterman by the Judge of the Probate Court of Cook County.   On May 24, 1905, the three appraisers submitted their appraisal in writing covering the various descriptions of property, including said lots 18 and 19.

In the bill filed in the case now before us it was represented to the court that the appraisal should be set aside because under the terms of the supplemental lease the duty of the appraisers provided for in said lease was to determine the true cash value of the demised land at the time of such appraisal, without taking into consideration the improvements thereon; that the appraisers, wholly disregarding their plain duty in that regard, did take into consideration the improvements upon the land; that the appraisers also took into consideration the rental value of other properties in the City of Chicago wholly different in character to said lots 18 and 19; that of the premises so taken into consideration by them, certain of said premises were interests in fee, wholly unburdened by any leasehold and not partaking in any way of the leasehold character of said lots 18 and 19; that such premises so taken into consideration were held under leases for a period of 99 years or more, without revaluation, and were improved with modern, fire-proof buildings, twelve stories and more in height, and wholly unlike and dissimilar to the improvements on lots 18 and 19; and that they therefore formed no criterion of the true cash value of said lots 18 and 19; that the true cash value of lots 18 and 19 did not and does not exceed the sum of $190,000; that the Board of Education, in the year 1895, without complainant's knowledge or consent, inaugurated the custom of paying the appraisers of school fund property large sums of

money for their services as appraisers, when rendered
to its satisfaction, and has acted in accordance with
said custom since that time; that Mr. McLaren was
paid in the year 1895 the sum of $1,000 for his services
as appraiser of school fund property; that the said
Messrs. McLaren, Kerfoot and Waterman in the year
1905 knew that the School Board would pay them
liberally for their services if they performed them to
its satisfaction; that the complainant had no knowl-
edge thereof; that after the appraisal was made and
before the bringing of the suit, and without complain-
ant's knowledge or consent, the School Board paid to
each of the said Messrs. McLaren, Kerfoot and Water-
man the sum of $2,500 for their services, and also paid
to one Aaron M. McKay $1,750 for services rendered
by him, without complainant's knowledge or consent;
that this payment was made to McKay for services
rendered by him in collecting information which the
complainant alleges to be misleading; that two of the
appraisers, namely, McLaren and Kerfoot, while en-
gaged in making their valuation of said lots 18 and 19,
were constantly and without complainant's knowledge
or consent in consultation respecting such valuation
with the attorneys, officers and agents of the Board of
Education, and with persons who are interested in the
matter of obtaining high valuation of property in the
vicinity of lots 18 and 19 for the purpose of rental and
sale; that on such occasions complainant was not pres-
ent, either in person or by representatives, and that the
discussions held and the information furnished in-
fluenced the appraisers prejudicially to the rights of
the complainant.

At the trial in the court below the charges of the
bill were attempted to be proven by the records of the
Board of Education and by the testimony of Mr. Mc-
Laren given at the trial, and the testimony of Mr. Ker-
foot taken in the case of Rosenthal vs. The Board of
Education of the City of Chicago, and read into the

record in this case.    The testimony of both these witnesses was objected to by the appellant on the ground of incompetency, in that an appraiser is never a competent witness to impeach his own appraisement.    The testimony of Mr. Kerfoot was objected to on the further ground that it was taken in a case in which the parties were not the same.    It apparently was admitted into the record on the theory that the case was of a similar character, and because the complainant, after due diligence, was unable to produce Mr. Kerfoot as his witness.    On the trial it was shown that Mr. McLaren had formerly been a member of the School Board, and that he made the appraisal on this property with other property in the year 1895, and that he was paid by the School Board for his services.    It further appears that each of the three appraisers in the case which we are now considering was paid by appellant $2,500 after the making of the appraisal, which, as heretofore stated, comprised about twenty-three descriptions of property.    There is also evidence that the appraisers were asked to make and did make an appraisal upon property at Twentieth street and Wentworth avenue, which the Board at the time contemplated leasing to the N. K. Fairbank Company; and also the property belonging to the Board and leased to George B. Weise; that they were not paid by the Board for making the valuations on the two properties last referred to, unless the sum of $2,500 heretofore referred to as having been paid to each of them included payment for services in respect to these two pieces of property also.

The appointment of Mr. McLaren as one of the appraisers came about in this way:    The Committee on Buildings and Grounds of the Board of Education, on February 1, 1905, submitted to the Board a report in which was recited the provision of the supplemental lease heretofore referred to, as to the appointment of the three appraisers—one by the Board of Education,

one by the Judge of the United States Circuit Court, and one by the Judge of the Probate Court of Cook County; and then follows this language:

"Your committee, therefore, recommends that the Board of Education of the City of Chicago appoint John McLaren as its appraiser to fix the value of such school fund properties and authorize and empower the President of the Board of Education to request the Judge of the Circuit Court of the United States in and for the Northern District of Illinois, and the Judge of the Probate Court of Cook County, Illinois, to each select an appraiser for the purpose of fixing the value of such school fund properties, to the end that the rental value of said properties may be fixed and determined for the period commencing May 8, A. D. 1905, and ending May 7, A. D. 1915."

On February 8, 1905, Mr. McLaren in accepting the appointment, in a letter addressed to the President of the Board of Education, used this language:

"Yours of yesterday with copy of action of Board of Education appointing me appraiser for the Board of Education to act with appraisers to be yet appointed in the appraisement of school land, was duly received.

I accept the appointment. As soon as I am notified of the appointment of the other two appraisers I will organize the commission and proceed to work."

At the threshold of the case it is necessary for us to consider whether or not the learned chancellor in the court below was warranted by the evidence in setting aside the appraisal. In considering this question it should be determined first whether the testimony of Mr. McLaren and Mr. Kerfoot was competent. There is considerable discussion in the briefs as to whether or not there is a distinction between an appraisal and an arbitration. We think, however, that in passing upon the point now before us there is enough similarity so that the rule which would apply in the case of an arbitrator should apply equally in that of an appraiser. In Stone v. Atwood et al., 28 Ill. 30, the court had before it the question as to whether or not an arbitrator

was a competent witness, and this language is used:

"Like a juror, he cannot be called to impeach his award, but like him he can be called to sustain it."

In the case of Pulliam v. Pensoneau, 33 Ill. 374, it was said:

"As a general rule, arbitrators will not be permitted to give evidence to impeach their award; to this rule there is an exception in cases of fraud" (citing authorities).

No fraud on the part of the appraisers is charged in this case, as we understand the record, briefs and arguments, and therefore the case does not come within the exception referred to in the foregoing excerpt. The rule so laid down in the early cases in Illinois seems to have been consistently adhered to, the last expression of it occurring in Stone v. Baldwin, 226 Ill. 338. Under the authority last mentioned, statements made by an appraiser after the appraisal is made may not be shown to impeach the appraisal, at least in the absence of fraud. We think, for the reason stated, that the testimony of Mr. McLaren and that of Mr. Kerfoot was improperly received.

The testimony of Mr. Kerfoot was taken, as heretofore stated, in another case, and the learned chancellor expressed in his opinion great doubt as to its admissibility. Under recent decisions we think there is no question but that it was improperly received and should not be considered. London Guarantee & Accident Co. v. American Cereal Company, 251 Ill. 123.

While the appellee does not charge the three appraisers or any of them with fraud or improper motive, he insists that in this case ample misconduct "in a legal sense" is shown to justify setting aside the appraisal; that the question should be not whether the improper acts complained of biased the appraisers, but whether they might have had that effect. It would seem that this was the view of the matter taken by the chancellor, as appears from the fourth finding of fact in the decree, this finding being as follows:

"(4)    And the court further finds that while said appraisers had under advisement the appraisal of said lots, together with other lots held under similar leases from said defendant to other lessees, said appraisers were employed by the President of the Board of Education, who was a member of the Committee on Buildings and Grounds, and who was in that behalf acting under the instructions of the Committee on Buildings and Grounds, to perform on behalf of said Board of Education certain services not connected with their duties as such appraisers; that said employment was without the knowledge or consent of said complainant, and that said complainant did not know of said employment until a period more than thirty days after the filing by such appraisers of the said valuation or appraisement made by them in the office of the clerk of the said defendant, and that said employment was sufficient to invalidate their said appraisal of said lots eighteen and nineteen.    That said appraisers in other respects failed and neglected to comply with the provisions of the said leases; and to perform their duties as appraisers, to such an extent as to invalidate said appraisement; that said John McLaren, before his appointment by said Board of Education in 1905, had been for many years identified with the administration of the affairs of the said Board of Education, as a member and president thereof, and as chairman of its Committee on Buildings and Grounds; that he had been appointed by the said Board of Education in the year 1895 to appraise the value of said lots in complainant's bill described and also of other lots held on various other leases, and had received compensation solely from said Board of Education of Chicago for his services in making said appraisements, amounting to Fifteen Hundred ($1,500) Dollars; that one or more of the said appraisers during all the time they were performing the duties of said pretended appraisal in the year 1905, understood and expected that they would receive compensation from the said defendant, the Board of Education, for making said appraisement, and that said appraisers were each in fact paid by said

defendant for their services as. such appraisers, which said payment by said defendant amounted to the sum of two thousand five hundred ($2,500) dollars to each of the said appraisers, and was without the consent or prior knowledge of said complainant, and that said complainant did not know of said expectation on the part of the said appraisers or either of them, or of said payment, until a period more than thirty days after the filing by such appraisers of the said valuation or appraisement made by them in the office of the clerk of said defendant; that none of the said appraisers rendered any bill or statement of account for services to the said complainant, or to any of said other lessees, and did not expect to receive payment for their services from either complainant or the other lessees, or from any person or persons other than the defendant herein.''

As will appear from a reference to the supplemental lease, it was provided therein substantially that it was the purpose of said instrument that persons appointed as appraisers thereunder, or either of them, should not be the representatives of either of the parties thereto.   It is insisted by the appellee that because in the report of the committee of the Board of Education recommending the appointment of Mr. McLaren, and in the reply of Mr. McLaren thereto, he is referred to as ''its appraiser'' and as ''appraiser for the Board of Education,'' it is demonstrated that it was the understanding both of the Board and Mr. McLaren that he was to act as the representative of the Board, which the appellee argues was in contravention of the provisions of the supplemental lease.   We are unable to draw such conclusion from the language used.   In our opinion, both the members of the Board of Education and Mr. McLaren meant by the language used to indicate that in compliance with the supplemental lease the Board of Education had selected Mr. McLaren to act with two others to be appointed by the judges, and that it would be his duty, having been so appointed by

the Board of Education, to act as chairman of the appraisers, call their meetings and preside thereat. We think there is no reason for saying that by the language so used the Board can be said to have regarded Mr. McLaren as "its" representative to any greater degree than would be the other two appraisers when so appointed by the judges in accordance with the terms of the supplemental lease.

Appellee insists also that Mr. McLaren was disqualified because he acted as an appraiser of the same property in 1895, and was paid for so doing, which fact was not known to appellee. We do not agree in this contention. Carried to its logical conclusion it would mean that no man, however well qualified, could act as appraiser on more than one piece of property or on more than one occasion for the Board of Education. Inasmuch as it is not claimed that Mr. McLaren was influenced by the fact that he had been previously employed, but only that he might have been influenced, we do not think the appraisal should be set aside on the ground stated. The same answer we think should be given to the argument of appellee that Mr. McLaren was disqualified because he had been formerly a member of the school board. Board of Education v. Frank, 64 Ill. App. 367.

The next complaint made is that the appraisers were each paid $2,500 by the appellant for making the appraisal of the property involved in this suit and other descriptions. In determining the force of this complaint the situation of the parties at the time the supplemental lease was entered into should be considered. Up to that time the three appraisers had, under the lease, been appointed by the Board of Education and presumably paid for their services by the Board. In the supplemental lease no provision as to payment of the appraisers appears, but we understand it to be admitted by both sides that in such circumstances both parties would be liable to them for a fair amount. By

the terms of the supplemental lease also the manner of the appointment of the appraisers was changed, and an opportunity was offered to the lessee to object if he chose to any appraiser selected, upon grounds that might seem to him to be sufficient. No objection in the present case was raised because, as appellee insists, he did not know until after the appraisal the facts upon which the complaints now made are founded.

By the terms of the supplemental lease, if no re-appraisal is made the rental for the following ten years is to be based upon the terms of the previous appraisal. The appraisal of 1895, namely $190,000, as shown by the testimony of every witness in the case, is very much less than the present cash value of the property upon whatever basis that value is determined. It is not unnatural, therefore, that the appellee should use every effort to have the present appraisal set aside and endeavor to have the court by its decree determine that there was no proper re-appraisal in 1905, and that there is no power lodged in the court to make a re-appraisement; that as a consequence thereof the appraisement of 1895 must stand as a basis for the rents for the ten years period from 1905 to 1915.

It is difficult for us to see how there can be any assurance of a re-appraisement of the property under the terms of the supplemental lease, at any time, if the contention of the appellee is to prevail. The contention is, as we understand it, that the Board of Education prior to appointing an appraiser, may not agree to pay him any compensation for his services; indeed it must not even suggest that he may be paid for his services; the appraisers appointed by the two judges likewise must not be told that they will be compensated for their services, and may not be paid therefor unless some prior agreement is made between the Board of Education and the lessee in respect to it. If the values of property in the central business section of the City of Chicago continue to enhance as they have in the past,

we can very readily understand how every lessee of school property would naturally be inclined to refuse to agree with the Board of Education upon the fees to be paid appraisers, so that perchance no new appraisement will be made, or if one is made it will be declared by the courts to be invalid on account of the fact that the appraisers are paid solely by the Board of Education. We cannot think that this idea was in the contemplation of the parties at the time the supplemental lease was executed. Nor do we think that the offer to pay or the payment in the first instance of the appraisers by the Board of Education is, in the absence of fraud on the part of the appraisers, sufficient ground to set aside the appraisal.

It is claimed by the appellee that the appraisers in making their appraisal did not observe the requirements of section 6 of the supplemental lease as that section is construed by the appellee. Section 6 provides that notwithstanding other provisions of the lease, "the appraisers shall be at liberty in forming their judgment of the value of the land without including the value of improvements thereon, to take into consideration, if and so far as they deem it pertinent to do so, the improvements on such land," etc. As we understand the contention of appellee, this provision should in his opinion be construed as mandatory upon the appraisers, and not permissive, and that the "cash value" of the property without improvements is necessarily less because of what is regarded as an onerous condition of the lease, namely the clause providing for revaluation. It is perhaps unnecessary to discuss the question last raised, because the only evidence as to what the appraisers did take into consideration is in the testimony of Mr. McLaren and Mr. Kerfoot, and this testimony we have already held to have been improperly received and not to be considered. In our opinion, however, section 6 of the supplemental lease should be treated as permissive and not

as mandatory.   The closing part of the section im-
poses upon the lessee the duty of furnishing to the ap-
praisers promptly upon request a statement showing
the rental receipts and disbursements on account of the
improvements for five years, as near as may be, next
preceding the time of the appraisement.   If the proper-
ty were improperly improved then of course these re-
ceipts would be less than if a building commensurate
with the value of the land were upon it.   Neither the
lease nor the supplemental lease gives to the Board of
Education any voice in determining the character of
the improvements to be placed upon the property.
That is a matter wholly for the lessee himself to deter-
mine.   If by entering into a lease with burdensome
conditions in it he has rendered it inadvisable or, as
the attorneys for the appellee say in their argument,
impossible, to construct upon the property a building
suitable to the location and best calculated to bring
the largest return, that fact, in our opinion, should have
no weight with the appraisers in fixing the true ''value
of the land without including the value of the improve-
ment thereon.''

The decree finds in terms that the valuation of $384,-
000 fixed by the appraisers was excessive and far above
the then true cash value of the demised land exclusive
of improvements thereon at the time of the appraisal.

There appears in the record the testimony of six
witnesses, three on behalf of appellant and three on
behalf of appellee.   The valuation placed by one of the
appellee's witnesses was $216,000; the other two fixed
the value at $288,000.   Two of appellant's witnesses
placed the value at $488,000, and one at $504,000.   It
is significant that notwithstanding the burdensome con-
ditions of the lease the appellee paid the sum of $85,-
000 for an assignment of it to himself.   The three ap-
praisers who were supposed to have been selected on
account of their knowledge of the subject placed the
value at $384,000.   This valuation we do not regard

as excessive or as furnishing the slightest basis in connection with other competent evidence in the case for the conclusion or even the inference that the appraisers were prejudiced or biased or that they were influenced improperly in arriving at the conclusion which they reached. The wide difference in the valuation placed upon the property by the six witnesses at the hearing makes apparent the difficulty of ascertaining what the real value is. The parties by their contract have fixed a mode of determining this value, and the conclusion reached by the persons selected for this purpose, whether they be treated as appraisers or arbitrators, should not be set aside except for very strong reasons which are plainly shown to exist. That is the doctrine, as we understand it, of Auditorium Association v. Fine Arts Building, 244 Ill. 532. In that case the court had before it an appraisal made of property on Michigan avenue, in Chicago. One of the appraisers, Mr. McCormick, was shown to be the owner of property near that in question, and it was insisted that he was thereby shown to be a prejudiced and unfair appraiser because, as was asserted, the fact that he was an owner of nearby property would tend to prejudice him in favor of a higher valuation than was proper. It was also charged that Mr. McCormick did not confine himself to the testimony of the witnesses at the public hearings as the only source of information to aid him in arriving at a conclusion as to the value of the property. The court refused to set aside the appraisement, notwithstanding the fact that one of the three men appointed appraisers refused to join in it. In that case as in this, no charge of fraud was made against the appraisers. The court reaffirmed the doctrine of Pearson v. Sanderson, 128 Ill. 88, to the effect that rules governing appraisements are not the same as rules governing arbitrations, and held that an appraiser has the right to obtain information in any way he chooses.

The appraisement in the case before us was signed by all three of the appraisers. No complaint is made of the conduct of Judge Waterman except the fact that he accepted remuneration from the Board of Education without the knowledge or consent of the appellee.

Much emphasis was laid in the oral argument by the attorneys for the appellee upon the fact that the appraisers were appointed or arranged for by one act of the Board of Education to establish the values upon a large number of pieces of property, instead of being appointed or arranged for specifically and by one act of that Board to pass upon the value of the property involved in this proceeding. This objection is more formal than substantial. It is sufficient answer to say that in the objection or protest which was filed with the Board of Education no mention is made of it. In the report of the appraisers each piece of property is valued separately.

In our opinion the learned chancellor erred, for the reasons stated, in the conclusion he reached. The decree will therefore be reversed and the cause remanded with directions to the Circuit Court to dismiss the bill of complaint.

*Reversed and remanded with directions.*